IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION


UNITED STATES OF AMERICA

v.                                    CAUSE NO. 5:20-cr-10-DCB-FKB

JORDAN RESHARD THOMAS                                      DEFENDANT


ORDER DENYING MOTION TO SURPRESS PHYSICAL EVIDENCE

    This matter is before the Court on defendant Jordan Reshard
Thomas's Motion to Suppress Physical Evidence [ECF No. 21] in
connection with a handgun found on the defendant during a
traffic stop.  The Court held a hearing on October 7, 2021,
during which the Court heard the testimony of the defendant, the
testimony of the two Adams County sheriff's deputies who made
the traffic stop and arrest, and the arguments of counsel.  At
the close of the hearing, defense counsel requested additional
time to research and brief the issue of missing evidence, which
the Court granted.  Having conducted an evidentiary hearing, and
having reviewed all submissions of the parties, the hearing
transcript, the documents and body camera video admitted into
evidence at the hearing, applicable statutory and case law, and
being otherwise fully informed of the premises, the Court finds
as follows:

1

Background Facts

Sheriff's Deputy Thomas McGinty, while on routine patrol adjacent to Morgantown Road, Adams County, Mississippi, observed a white 2004 Crown Victoria Ford automobile with two occupants – the driver, Jarvis Turner, and passenger, Jordan Thomas ("Defendant").  [ECF No. 21] at 1-2; [ECF No. 35] ("Hr'g Tr.") at 5:22-6:25.  Through the front windshield, Deputy McGinty observed, first, that the passenger did not have a seatbelt in place as required by Mississippi law, and then noticed through the partially opened driver-side window that the driver was also in violation for the same reason.  Hr'g Tr. at 6:4-7:13.  The vehicle was stopped, and Deputy McGinty made a driver-side approach.  Hr'g Tr. at 8:11-12.  Deputy McGinty spoke with the driver and saw that he was not wearing a seat belt.  Hr'g Tr. at 8:11-12; 9:1-3.  A very short time thereafter, Sheriff's Deputy David Nations arrived and made a passenger-side approach of the vehicle.  Hr'g Tr. at 8:21-25; Ex. A to [ECF No. 36], audio of 911 calls in CD format (see Notice of Conventional Filing [ECF No. 39]).  Both deputies were wearing body cameras, Hr'g Tr. at 10:8[1], and both detected a strong smell of marijuana coming from

_____

[1] At the hearing, the Court received into evidence Deputy Nations's bodycam video.  Hr'g Ex. G-1.  As discussed further below, Deputy McGinty's bodycam video never was included in the case file and, despite efforts, could not be retrieved from the

inside the stopped vehicle.  Hr'g Ex. G-1 [ECF No. 31-1]
(Nations bodycam video); Hr'g Tr. 35:22; 36:9; 62:11-14; Hr'g
Ex. D-5 [ECF No. 33-1](McGinty report).  On cross-examination,
Defendant conceded that the two occupants, a short time before,
were smoking marijuana.  Hr'g Tr. 68:24-69:3.  Responding to
several questions from the deputies, Defendant was initially
untruthful about possessing a firearm, but a pat down ensued for
officer protection, and a Smith & Wesson .40 Caliber Pistol was
removed from Defendant's waistband.  Hr'g Ex. G-1 [ECF No. 31-
1](bodycam video); Hr'g Tr. 62:11-23; 69:16-18; [ECF No. 24] at
2.  Defendant was arrested for carrying a concealed weapon.
Hr'g Tr. 62:22-23.  Defendant also was untruthful to the
deputies regarding his arrest record.  Hr'g Tr. 69:19-22.
Defendant stated, at first, that he never had been arrested, but
it was determined that Defendant had been convicted in September
2016 of burglary, a felony offense.  Hr'g Ex. G-1 [ECF No. 31-
1](bodycam video); Hr'g Tr. 15:21-16:15; 42:12-20; 69:19-22;
[ECF No. 24] at 2.

Claiming that the deputies were lying, Hr'g Tr. 70:14-17,
Defendant presented a different version of events during his
testimony at the hearing.  Defendant testified that both he and
the driver of the vehicle were wearing seatbelts and took them

---

Sheriff Department's bodycam video storage provider, Axon.  Hr'g
Tr. at 10:8-19; 26:13-27:7; 34:2-24; 44:14-46:8.

off when the deputies told them to step out of the car.  Hr'g
Tr. 66:11-12, 10:10-17.  He also testified that Deputy Nations
(not McGinty) initiated the traffic stop and waited in his
unmarked car until Deputy McGinty arrived on the scene.  Hr'g
Tr. 67:18–68:18; 77:13-19.  Defendant's testimony regarding the
order of each deputy's arrival at the traffic stop is contrary
to the sequence of events recorded on the audio of the 911
calls.  Ex. A (911 audio) and Ex. B (affidavit of Adams County
Sheriff's Office Deputy Chief Neely regarding call signs for
each deputy referenced on the 911 audio) to [ECF No. 36]; see
also Notice of Conventional Filing [ECF No. 39].

### Legal Analysis and Discussion

An officer's reasonable suspicion that there is a traffic
violation – including a failure to wear seatbelts - is an
appropriate basis for stopping a vehicle.  United States v.
Portillo-Saravia, 379 F. Supp. 3d 600, 611 (S.D. Tex. 2019)
(initial traffic stop was a lawful seizure based on
reasonable suspicion that the vehicle's occupants were not
wearing seatbelts); see also United States v. Lopez-Moreno, 420
F.3d 420, 430-31 (5th Cir. 2001) ("For a traffic stop to be
justified at its inception, an officer must have an objectively
reasonable suspicion that some sort of illegal activity, such as
a traffic violation, has occurred, or is about to occur, before

4

stopping the vehicle"; non-functioning break light provided reasonable basis for stop); United States v. Smith, 355 F. Supp. 3d 544, 549 (N.D. Miss. Nov. 27, 2018), aff'd, 952 F.3d 642 (5th Cir. 2020) ("No party disputes that Solomon had reasonable suspicion to initially stop Smith for driving a vehicle without a visible tag."); Miss. Code Ann. § 63-2-1 ("When a passenger motor vehicle is operated in forward motion on a public road, street or highway within this state, every operator and every passenger shall wear a properly fastened safety seat belt system … .").

In this case where Defendant offered testimony which is in conflict with statements of witnesses called by the Government, including whether Defendant and the vehicle's driver were wearing seat belts, the Court is burdened with the task of deciding which evidence is more credible.  United States v. Jones, 187 F. Supp. 3d 714, 723 (M.D. La. 2016) ("At a suppression hearing, it is well within the trial court's discretion to weigh the evidence and make credibility determinations regarding conflicting testimony.")(internal quotation marks and citation omitted).  Having observed the demeanor of the witnesses and having considered their testimony, both under direct and cross-examination, the Court finds that the testimony of Sheriff Deputies McGinty and Nations is more credible.  Factored into this analysis is the testimony of

Defendant who, at the evidentiary hearing, acknowledged that at
the time of this incident which occurred on April 13, 2020, he
was untruthful with the officers on at least two occasions:
first, when he denied having a firearm, and second, when he was
not truthful about his prior criminal history.  The Court
therefore finds that Deputy McGinty had the requisite reasonable
suspicion to initiate the traffic stop on the basis of a seat
belt violation and that the undisputed odor of marijuana coming
from the car provided the deputies with the additional
reasonable suspicion necessary to prolong the stop.  United
States v. Brigham, 382 F.3d 500, 509 (5th Cir. 2004)(en banc)
(absence of the authorized driver, inconsistent explanations, and
presentation of a fictitious I.D., taken together, justified the
continued detention of defendants).

     The safety pat-down of Defendant and discovery of the
concealed weapon in Defendant's waistband also were justified
under the circumstances.  Terry v. Ohio, 392 U.S. 1, 26-27
(1968) (search "limited to that which is necessary for the
discovery of weapons which might be used to harm the officer or
others nearby" was justified); United States v. Fontenette, No.
Crim. 07-60028, 2008 WL 4547507, at *5 (W.D. La. Oct. 10,
2008)(" …[W]hile the initial stop was to investigate traffic
violations, given the odor of burnt marihuana which was
immediately detected by the officers when they approached the

vehicle, a reasonable officer … would have an additional
articulable, reasonable suspicion that one of the occupants of
the vehicle had illegal drugs on his person, providing further
support for the detention and frisk of [defendant]).

In a post-hearing brief, [ECF No. 34], Defendant argues
that, because Deputy McGinty's bodycam video was not preserved
in the case file, and because a supplemental report from Deputy
McGinty and a copy of the warning citation issued to the
vehicle's driver also were absent from the fie, the deputies
acted in bad faith, and the Court should sanction the Government
under the doctrine of spoliation.  [ECF No. 34] at 2, 6-8; see
Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir.
2001) ("Spoliation refers to the destruction or material
alteration of evidence or to the failure to preserve property
for another's use as evidence in pending or reasonably
foreseeable litigation.").  Defendant further argues that the
failure to preserve video and documentary evidence violates his
due process rights under the Fifth and Fourteenth Amendments.
Id. at 1-2, 9-12.

Although in the processing of this crime scene and in the
documentation which followed, there appear to be time lapses
regarding the preparation of a report and some degree of
carelessness regarding documentation, the Court finds that these
oversights are administerial in nature, akin to clerical errors,

and in no way diminish the credibility of the testifying
officers.  On this record, it appears to the Court that the gaps
in the case file are most likely attributable to Deputy
Nations's new arrival to the Heavy Enforcement Action Team
(HEAT) unit and a misunderstanding between the deputies
regarding responsibilities for building the case file, but do
not amount to bad faith or misconduct on the part of the
deputies and do not warrant sanctions as Defendant urges.  Hr'g
Tr. 18:12-15; 43:9-45:21; see Arizona v. Evans, 514 U.S. 1
(1995) (exclusionary rule does not require suppression of
evidence seized in violation of the Fourth Amendment where the
erroneous information resulted from clerical errors of court
employees); United States v. Herring, 492 F.3d 1212 (11th
Cir.2007) (application of the exclusionary rule rejected where
there had been an unlawful search conducted incident to an
unlawful arrest based on an administrative error).

   With respect to Defendant's due process violation claim,
Defendant concedes that the never-viewed McGinty bodycam video,
warning citation and supplemental report could "either
corroborate or contradict" Defendant's version of events.  [ECF
No. 34] at 10.  The Fifth Circuit has described such unavailable
evidence as "potentially useful."  United States v. McNealy, 625
F.3d 858, 868 (5th Cir. 2010).  Having already determined that
there was no showing of bad faith by the deputies, the Court

finds that the failure to preserve this potentially useful but uncertain evidence does not constitute a denial of due process. Id. ("[F]ailure to preserve merely potentially useful evidence does not constitute a denial of due process absent a showing of bad faith.").

Accordingly,

IT IS HEREBY ORDERED that Defendant Jordan Reshard Thomas's Motion to Suppress Physical Evidence [ECF No. 21] is DENIED; and

IT IS FURTHER ORDERED that the trial date in this matter is hereby reset to the term of Court beginning January 10, 2022.

SO ORDERED, this the 5th day of November, 2021.


/s/  David Bramlette
UNITED STATES DISTRICT JUDGE